IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 2018-_____-cv- _____

JAMIE RASHAD BROWN,

        Plaintiff,

v.

TI'ANDRE BELLINGER, individually.

        Defendant._____/

## COMPLAINT

Plaintiff, JAMIE RASHAD BROWN ("Jamie"), brings this action against one individual, TI'ANDRE BELLINGER ("Bellinger"), a City of Miami police officer.

The first count is against Defendant for a federal civil rights violation against Jamie under the Eighth Amendment of the United States Constitution for the use of unnecessary and excessive force which caused cruel and unusual punishment as well as physical and emotional distress. The second count is against Defendant for the intentional infliction of severe emotional distress to Plaintiff.

## JURISDICTION

1.    The Court has jurisdiction of the federal claims in this action pursuant to 28 U.S.C. §1331 and 42 U.S.C. § 1983, and over the state claims pursuant to its derivative jurisdictional powers.

2.    Plaintiff is a citizen of the United States and a resident of Miami-Dade County, Florida.

3. Bellinger is, upon information and belief, a citizen and resident of the State of Florida. This action is being brought against him individually.

4. These claims arose in the Southern District of Florida and thus venue is appropriate there.

## THE FACTS

5. Jamie is a lifelong resident of Miami-Dade County who, during all times material to these claims was employed on a part-time basis at Quick Stop, a neighborhood grocery store located at NW 46th Street and NW 7th Avenue in the City of Miami. He was 28 years-old when the events described in the complaint occurred.

## INCIDENT ONE

6. At about 10:00 P.M., a dispute arose between two women who had been in a car outside the store. A third woman apparently called the police, after which all three of them cleared the scene.

7. Shortly thereafter, while Jamie and a co-worker ("Co-worker No. 1")[1] were standing in the doorway of the store, Bellinger, uniformed, arrived in a marked City of Miami police car. While Jamie was doing nothing except standing at the door of the store, Bellinger approached him with his gun drawn and ordered him initially to the ground and then up against a car.

8. Bellinger then handcuffed Jamie.

9. Once handcuffed, over Jamie's objection, and within a few feet of co-worker No. 1, Bellinger began to search Jamie. Jamie told him that the people who had been involved in the incident had already left, which was confirmed by co-worker No. 1.

---

[1] Co-worker # 1 has not been identified in the complaint to protect him against retaliation by Bellinger or his co-workers.

10. Despite his explanation and protestations, Bellinger patted Jamie down. He then inserted his right hand down into Jamie's boxer shorts, between the inside of Jamie's boxers, and his uncovered skin, running his hand along Jamie's penis and scrotal sack and grasping his testicles. He kept his hand down there, touching and probing for at least three to four minutes.

11. Bellinger then told Jamie to turn around and slid his right hand down, inside Jamie's boxers, along the crack between Jamie's buttocks, again for two to three minutes.

12. Jamie was shocked and objected, while co-worker No. 1, who witnessed the entire event, also looked on in shock.

13. Prior to this event, Jamie, who is happily and unchangeably heterosexual, has never had another man touch his private parts except a doctor before he entered puberty.

14. Bellinger kept indicating that he was looking for "weed" and after he had finished molesting Jamie, found some weed in a small pocket in a jacket Jamie was wearing, nowhere near his genitals.

15. Bellinger then placed Jamie under arrest. After Bellinger failed to appear at court more than once, the State nolle-prossed the possession of marijuana case in January 2018.

## INCIDENT TWO

16. Two days after the first incident, at about the same time, Bellinger pulled up to the store where Jamie was standing by the front door with a different co-worker ("co-worker No 2").[2]

17. Bellinger pulled up again, uniformed and in a marked City of Miami police car. This time, he called Jamie by name and told him to get up against the wall, where he initiated a pat-down search again, but this time without handcuffs.

18. When Bellinger's hands reached Jamie's boxer shorts, Jamie told Bellinger to back off, that the search was improper. Bellinger then backed off.

19. Jamie also told Bellinger that with the one charge pending, Bellinger should leave Jamie alone and not be harassing him.

20. The second search produced no contraband, and at that point, a female sergeant, uniformed and in a marked City of Miami police car, pulled up, Bellinger and the sergeant spoke and after detaining Jamie about 30 minutes Bellinger and the sergeant left.

21. The actions of Bellinger unlawfully punished and terrorized Jamie as well as caused him painful physical, psychological and emotional injuries.

22. Jamie was able to secure his release from the first arrest through pre-trial intervention without posting a bond.

23. Because of the threat of harassment and continued sexual molestation by Bellinger, Jamie stopped working at the store.

---

[2] As with Co-worker No 1, co-worker no.2 would like his identity protected to avoid harassment by Bellinger or his colleagues.

4

24. Due to Jamie's arrest, he was compelled to hire a criminal defense attorney to represent him in the misdemeanor criminal proceedings.

25. As a result of the above-stated unlawful actions by Bellinger, Jamie has been compelled to retain the services of undersigned counsel and is obligated to pay them a reasonable fee for their services for which Bellinger is responsible to pay under the law.

26. In addition, as a result of Bellinger's actions, Jamie has been forced to seek housing elsewhere and to curtail any visits to the area of the store.

## COUNT I
## VIOLATION OF FEDERAL CIVIL RIGHTS

27. Jamie incorporates each and every allegation and averment contained in paragraphs 1 through including 26 of this Complaint as though fully set forth herein.

28. Bellinger used excessive and humiliating force in causing Jamie to suffer a slow, unnecessary, unwarranted and humiliating body search that included unlawfully touching over and groping areas of his abdomen, hips, thighs, buttocks, penis, and genital area, WHILE HANDCUFFED.  This excessive force body search, which occurred after the initial pat-down search of Jamie, produced neither weapons, drugs or other contraband.  What it did do, however, was to terrorize and injure Jamie as well as deprive him of constitutionally protected rights, privileges and immunities secured to him by the Eighth Amendment to the United States Constitution and 42 U.S.C. 1983.  The Eighth Amendment prohibits law enforcement officers from using cruel and unusual punishment on incarcerated citizens.

29. Further, the unlawful actions of Bellinger constitutes clearly excessive and unlawful force.  Again, the unlawful, unnecessary and excessive force used by Bellinger

in doing a second, more genitally-focused "search" of Jamie deprived him of rights, privileges and immunities secured to him by the Eighth Amendment to the United States Constitution and 42 U.S.C 1983, that is law enforcement officers are prohibited from using cruel and unusual punishment, including sexual abuse, against detainees.

    WHEREFORE, Jamie seeks compensatory damages, attorney's fees, costs, interest, and such further relief against Bellinger, as the Court finds to be just and proper.

## COUNT II
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

    30.    By this reference, Jamie incorporates each and every allegation contained in paragraphs 1 through and including 26 in this Complaint as if fully set forth herein.

    31.    Intentional infliction of emotional distress consists of the deliberate and reckless infliction of mental suffering; outrageous conduct; the outrageous conduct caused the emotional distress; and, the distress was severe.

    32.    Bellinger, while conducting an unlawful body and cavity search on a public street, while Jamie was handcuffed, and while perhaps arrested was intended to cause severe emotional harm to Jamie. Bellinger's conduct was so shocking that it went beyond all bounds of human decency; his actions are totally intolerable in a civilized community.  Bellinger's conduct clearly rises to an extreme level of outrage as it caused severe emotional harm to Jamie.

    33.    Jamie suffered severe and ongoing emotional distress and was hugely humiliated, to the point of not even being able to describe his injuries to his counsel for months after the incident occurred, as a result of the illegal and horrific actions of Bellinger.

34. Jamie has been compelled to retain the services of undersigned counsel and is obliged to pay them the reasonable fees and costs for their services for which Bellinger is responsible under the law.

Wherefore, Jamie seeks compensatory damages, attorneys' fees, costs, interest and such further relief against Bellinger as the Court finds just and proper.

## DEMAND FOR JURY TRIAL.

35. Plaintiff seeks that this cause and all issues in this case be tried before a jury.

## RIGHT TO SEEK PUNITIVE DAMAGES

36. Jamie reserves the right to amend his pleadings to seek punitive damages against Bellinger, as may be justified hereafter upon application to the Court.

**DATED**: February 7, 2018.

        Respectfully submitted,

        Joseph P. Klock, Jr., Esq., FBN 156678
        Hilton Napoleon, Esq., FBN 17593
        RASCO KLOCK PEREZ NIETO
        2555 Ponce de Leon Blvd., Suite 600
        Coral Gables, FL 33134
        (305) 476-7111 Telephone
        (305) 675.7707 Facsimile
        Email: jklock@rascoklock.com
        Email: hnapoleon@rascoklock.com

        *Counsel for the Plaintiff, Jamie Rashad Brown*

        By:   */s/ Joseph P. Klock, Jr.*
              Joseph P. Klock, Jr., Esq.