United States District Court
for the
Southern District of Florida

| Jamie Rashad Brown, Plaintiff, | ) | |
|---|---|---|
| | ) | |
| v. | ) | Civil Action No. 18-20481-Civ-Scola |
| | ) | |
| Ti'Andre Bellinger, Defendant. | ) | |

### Order Granting Motion for Summary Judgment

This case arises from an incident involving Plaintiff Jamie Rashad Brown and Defendant Ti'Andre Bellinger, a City of Miami police officer. Brown alleges that Bellinger violated his Fourth Amendment rights and is liable for intentional infliction of emotional distress. Now before the Court is Bellinger's motion for summary judgment (ECF No. 39). Upon review of the parties' briefs and the relevant legal authorities, the Court **grants** the Defendant's motion (**ECF No. 39**).

### I. Background

According to the Plaintiff's statement of material facts, Brown was standing inside a Quick Stop when he noticed that there was a commotion in the parking lot between three women. (ECF No. 45 at ¶ 1.) One of them called the police. (*Id.*) Bellinger arrived at the scene and ordered Brown to "come here." (*Id.* at ¶ 3.) Bellinger asked Brown, "Do you have anything in your pockets." Brown told him, "No." (*Id.* at ¶ 4.) Bellinger searched Brown anyway and found marijuana in Brown's jacket pocket. (*Id.*) Bellinger then handcuffed Brown. (ECF No. 33 at ¶ 8.) Bellinger put on latex gloves (ECF No. 39-3 at 53), patted Brown down, and put his hands inside of Brown's boxers and "fondled Brown's penis and testicles for two minutes." (ECF No. 45 at ¶ 9.) Bellinger stopped the search when Brown yelled, "Yo, you know, what the fuck." (*Id.*). Bellinger then placed Brown under arrest. (ECF No. 33 at ¶ 15.)

The Plaintiff's recitation of the facts is undermined by a number of misleading and contradictory statements found in the record. For example, the Plaintiff's complaint alleges that he was employed at the Quick Stop where the incident occurred. (ECF No. 33 at ¶ 5.) Brown also alleges that he stopped working at Quick Stop "[b]ecause of the threat of harassment and continued sexual molestation by Officer Bellinger." (*Id.* at ¶ 23.) But the Plaintiff testified during his deposition that he was unemployed at the time of the incident. (ECF No. 39-3 at 17:8-11.) The complaint also alleges that the Defendant approached Plaintiff with his gun drawn and ordered him to the ground and up against a

car. (ECF No. 33 at ¶ 7.) The Plaintiff testified that Bellinger pulled up to the store in his police car and asked Plaintiff to "come here" and Plaintiff walked towards the Defendant. (ECF No. 39-2 at 38:4-13.) The Plaintiff's statement of facts in response to the Defendant's motion for summary judgment also states that the search lasted about "seven minutes." (ECF No. 45 at ¶ 9.) However, the Plaintiff testified that the search of his genitals lasted about a minute and a half. (ECF No. 39-3 at 55:13-16.) Although the complaint alleges that the Defendant searched Plaintiff's buttocks, the Plaintiff testified that there was no search to the back of his body. (*Id.* at 56:2-4.)

Bellinger's actions allegedly caused Brown to suffer physical, psychological, and emotional injuries. Brown testified that his experience was "disgusting and upsetting to the point that it is painful and upsetting to even discuss it." (ECF No. 45 at ¶ 54.) Brown filed suit against Bellinger for excessive use of force in violation of the Fourth Amendment and intentional infliction of emotional distress.

## II. Legal Standard

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *See Alabama v. North Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). At the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmoving party, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970), and it may not weigh conflicting evidence to resolve disputed factual issues, *see Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007). Yet, where the record could not lead a rational trier of fact to find in the nonmovant's favor, there is no genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Generally, "[o]nce the moving party has met its burden of showing a basis for the motion, the nonmoving party is required to 'go beyond the pleadings' and present competent evidence designating 'specific facts showing that there is a genuine issue for trial.'" *United States v. $183,791.00*, 391 F. App'x 791, 794 (11th Cir. 2010) (citation omitted). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but [ ] must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted).

## III. Analysis

### A. Count I

Count I of Brown's complaint is styled "Violation of Federal Civil Rights." (ECF No. 33 at 5.) In Count I, Brown alleges that Bellinger used excessive and humiliating force when he subjected Brown to a body search that included unlawful touching and groping of his abdomen, hips, groin, and genitals. (*Id.*) Brown asserts that the "Fourth Amendment prohibits law enforcements officers from using cruel and unusual punishment on incarcerated individuals." (*Id.*) And Bellinger's actions "constitute clearly excessive and unlawful force." (*Id.*)

While the Defendant's motion for summary judgment does not address Brown's conflation of the Fourth and Eighth Amendments, the Court will briefly address this issue. The Eighth Amendment protects incarcerated individuals from cruel and unusual punishment. The Court, in its order on the Defendant's motion to dismiss, ruled that an Eighth Amendment claim was not actionable in this case because Brown was not incarcerated. (ECF No. 24.) The Fourth Amendment protects individuals from the use of excessive force during the course of an arrest. *Stephens v. DeGiovanni*, 852 F.3d 1298, 1320 (11th Cir. 2017). Accordingly, the Court construes Count I of Plaintiff's complaint as a claim under the Fourth Amendment for excessive use of force.

The Defendant argues that Bellinger is entitled to qualified immunity as to Count I. (ECF No. 39 at 4.) According to Bellinger, he did not violate the Plaintiff's clearly established constitutional rights because a brief search of the Plaintiff's genitals during a search for drugs is not unreasonable under established caselaw. (*Id.* at 6.) In response, Brown asserts that "[e]very reasonable male officer should know that creeping up behind a male detainee, caressing his chest, hugging him like a female, and then fondling his penis and testicles for two minutes on an open street is not only disgusting, but obviously violates the Constitution." Brown cites no case law in support of his assertion.

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kingsland v. City of Miami*, 382 F.3d 1220, 1231 (11th Cir. 2004) (quotation marks omitted). To claim qualified immunity, a public official must first establish that he was engaged in a "discretionary duty." *Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005). "A court must ask whether the act complained of, if done for proper purpose, would be within, or reasonably related to the outer perimeter of an official's discretionary duties." *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017). Once it is established that a public official was acting in a discretionary capacity, the burden shifts to the

plaintiff to establish "both that the defendant committed a constitutional violation and that the law governing the circumstances was already clearly established at the time of the violation." *Youmans v. Gagnon*, 626 F.3d 557, 526 (11th Cir. 2010). "An officer will be entitled to qualified immunity if his actions were objectively reasonable, that is, if an objectively reasonable officer in the same situation could have believed that the force used was not excessive." *Kesinger v. Herrington*, 381 F.3d 1243, 1247 (11th Cir. 2004). Courts "must be careful to evaluate the reasonableness of an officer's conduct on a case by case basis from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight." *Noel v. Gross*, No. 16-62637, 2018 U.S. Dist. LEXIS 110222, at *29 (S.D. Fla. June 29, 2018) (White, Mag. J.), *aff'd*, 2018 U.S. Dist. LEXIS 149334 (Gayles, J.). "[D]ecisions of the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state (here, the Supreme Court of Florida) can clearly establish the law." *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007).

Here, the only search at issue is the search that included the touching of Brown's genitals. There is no dispute between the parties that Bellinger was acting within his discretionary authority in conducting a search of the Plaintiff after Bellinger found marijuana in the Plaintiff's pocket. (ECF No. 39-3 at 42:4-9; ECF No. 46 at 6.) The question before this Court is whether the Plaintiff has established that the use of force during the search was (1) objectively reasonable and (2) violated clearly established law. The court's reasonableness inquiry must look to the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Nolin v. Isbell*, 207 F.3d 1253, 1255 n.2 (11th Cir. 2000) (citing *Graham v. Connor*, 490 U.S. 386 (1982)).

In *Noel v. Gross*, the plaintiff was stopped for an expired vehicle registration. 2018 US Dist. LEXIS 110222 at *12. The officer recognized the plaintiff as someone with a history of violence and ordered him out of the car. *Id.* at *35. The officer pushed the plaintiff face down on the pavement, bent the plaintiff's knees, put pressure on the plaintiff's legs to restrain him, and conducted a cavity search of the plaintiff's rectum. *Id.* at *34-*35. The court found that "a reasonable officer in [the defendant's] position, who had prior encounters with the suspect, and knew him to be aggressive and angry, exercised force that was no more than *de minimus*, even assuming, without deciding, that [the defendant] conducted a 'queer' search of the Plaintiff's buttock area." *Id.* at *33. The court noted that "it is well settled that, pushing a suspect to the ground, and then holding the suspect there as his groin area or genitals are uncomfortably searched, has been found to fall within the ambit of *de minimus*

force, thereby foreclosing any constitutional violation." *Id.* at *35-*36 (citing *Bryan v. Spillman*, 217 F. App'x 882 (11th Cir. 2007)).

"*De minimis* force, without more . . . cannot constitute a Fourth Amendment violation if the basis of the arrest is not challenged." *McCall v. Crosthwait*, 590 F. Supp. 2d 1337, 1342 (M.D. Ala. 2008) (citing *Nolin*, 207 F.3d at 1257). "Under the *de minimis* principle, a minimal amount of force *and* injury . . . will not defeat an officer's immunity in an excessive force case." *Id.* (internal citations and quotations omitted). Although injury is not required to maintain an excessive force claim, the absence of injury can signal whether the force was minimal. *Id.* at 1345. "As the Supreme Court has stated, 'not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.'" *Id.* at 1345 (citing *Graham v. Connor,* 490 U.S. 386, 396-97 (1989)). *See also Woodruff v. Trussville,* 434 F. App'x 852, 855 (11th Cir. 2011) (finding *de minumus* force where officer punched plaintiff in the face, forcefully removed him from his car, and slammed him on the ground).

The Court finds that Bellinger's use of force was *de minimus*. Taking the facts in the light most favorable to the Plaintiff, Bellinger found some amount of marijuana on Brown. (ECF No. 39-3 at 44:3-5.) He then handcuffed Brown, stood behind him, searched inside Brown's boxers, and fondled his testicles. (ECF No. 45 at 10.) According to the Plaintiff's deposition, this search lasted about 90 seconds. (ECF No. 39-3 at 55:13-16.) Bellinger's search for additional marijuana on Brown's person is objectively reasonable given that he had already found drugs on the Plaintiff. Although the Court finds a 90-second search of Brown's private parts unnecessarily long, it does not rise to the level of excessive force under the Fourth Amendment. *See Bryan*, 217 F. App'x at 886 (finding "temporary pain" and "no lasting injury" from a rough search of the plaintiff's genitals to be *de minimus*). *Cf. Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002) (finding that the officer used excessive force when he led the plaintiff to the back of the car and slammed her head against the trunk *after* she was arrested and secured in handcuffs).[1]

Even if the Court were to decide that the search was unconstitutionally unreasonable, the Plaintiff has failed to show that the officer's conduct was a

---

[1] The Court notes that sexual assault claims against police officers may be brought under the Fourteenth Amendment of the Constitution. *See, e.g., Doe v. City of Miami Gardens*, 389 F. Supp. 3d 1118, 1133 (S.D. Fla. 2019) (Ungaro, J.) (sexual assault incident did not violate the Fourth Amendment although it "arguably may have constituted a substantive due process violation."). The plaintiff also may have pursued a Fourth Amendment claim for an unconstitutional post-arrest investigatory strip search. *See, e.g., Evans v. Stephens,* 407 F.3d 1272, 1279 (11th Cir. 2005).

violation of clearly established law. "The burden of showing that an officer violated clearly established law falls on the plaintiff, and a plaintiff's citation of general rules or abstract rights is insufficient to strip a § 1983 defendant of his qualified immunity." *Jackson v. Sauls*, 206 F.3d 1156, 1165 (11th Cir. 2000). "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Id.* Here, the Plaintiff seems to disagree with this standard and asserts that "Bellinger did not need a case directly on point to notify him that he was violating [Brown's] Fourth Amendment right." (ECF No. 45 at 10.) The Plaintiff asserts that "[e]very reasonable male officer should know that creeping up behind a male detainee, caressing his chest, hugging him like a female, and then fondling his penis and testicles for two minutes on an open street is not only disgusting, but obviously violates the Constitution." (*Id.*) The Plaintiff's one-sentence conclusory argument does not defeat the Defendant's qualified immunity. Moreover, the Plaintiff's contradictory and misleading claims found throughout the record fail to properly refute the Defendant's motion. Accordingly, the Court grants the Defendant's motion as to Count I.

### B. Count II

Count II of Plaintiff's complaint asserts a claim for intentional infliction of emotional distress. (ECF No. 33 at 6.) The Defendant argues that the Plaintiff has not established that the incident rises to the level of outrageous conduct required for an intentional infliction of emotional distress claim. (ECF No. 39 at 10.) The Defendant also argues that the Plaintiff has failed to provide evidence that the incident resulted in severe emotional distress. (*Id.*) In response, Brown does not provide any case law or support for his positions. Instead, he asserts that "Bellinger's arguments are totally baseless." (ECF No. 45 at 11.)

Under Florida law, a claim for intentional infliction of emotional distress requires the plaintiff prove: "(1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct, *i.e.*, behavior that goes beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community; (3) the conduct caused the emotional distress; and (4) the distress was severe." *Rubio v. Lopez*, 445 F. App'x 170, 175 (11th Cir. 2011).

The Court finds that Bellinger is entitled to summary judgment on Count II. First, Brown has failed to "produce evidence that [Bellinger's] conduct goes beyond all possible bounds of decency and is atrocious, and utterly intolerable in a civilized community." *Id.* Second, Brown "has failed to produce evidence showing that [Bellinger's] conduct caused severe emotional distress." *Id.* The Plaintiff testified that he has never seen a doctor as a result of the incident. (ECF No. 39-3 at 87:25-88:2.) He routinely visited a psychiatrist every six months

because of unrelated issues. (*Id.* at 88:3-7.) Brown has not "suffered any physical symptoms, has not taken any medications, has not received any medical treatment, and has not received any professional counseling from a healthcare provider, psychiatrist, psychologist, or social worker as a result of the incident." *Carroll v. Tavern Corp.,* No. 08-cv-2514, 2011 WL 1102698, at *28 (N.D. Ga. Feb. 9, 2011). Therefore, a "reasonable jury could not examine the evidence before the court and conclude that Plaintiff [ ] suffered emotional distress that was severe." *Id.* Accordingly, the Court grants the Defendant's motion as to Count II.

## IV. Conclusion

Based on the foregoing, the Court **grants** the Defendant's motion for summary judgment. (**ECF No. 39**.) Judgment will be entered by separate order. The **Clerk** is directed to **close** this case. All pending motions, if any, are denied as **moot**.

**Done and ordered** in chambers, at Miami, Florida, on October 17, 2019.

_____
Robert N. Scola, Jr.
United States District Judge